**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 26-412-DLB**

**NOE PEREZ ROMERO** **PETITIONER**

**v.** **MEMORANDUM ORDER**

**JAMES DALEY, et al.** **RESPONDENTS**

*** **** *** **** ***

## I. INTRODUCTION

This matter is before the Court on Petitioner Noe Perez Romero's Petition for Writ of Habeas Corpus. (Doc. # 1). For the following reasons, the Court **denies** the Petition.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Noe Perez-Romero is a native and citizen of Guatemala who entered the United States without inspection in 2001 and has resided in the United States since that time. (Doc. # 1 ¶ 21). Petitioner was arrested by the Georgetown Police Department in Scott County, Kentucky on June 8, 2026 and charged with disregarding a traffic control device (traffic light) and no operator-moped license. (Doc. # 1-1). After his arrest on June 8, 2026, Petitioner was transferred to immigration custody. He is currently being detained at the Campbell County Kentucky Detention Center. (Doc. # 1 ¶ 25). Respondents initiated removal proceedings against Petitioner on June 10, 2026 by filing a Notice to Appear (Doc. # 1-3) with the Executive Office for Immigration Review (Doc. # 1 ¶ 25). Those proceedings are ongoing. (*Id.* ¶ 26).

In October of 2024, Petitioner filed a Form I-360 Self-Petition under the Violence Against Women Act ("VAWA") as the abused parent of a U.S. citizen (Doc. # 1-5) as well as a corresponding I-485 Application to Register Permanent Residence or Adjust Status (Doc. # 1-6). Since that time, United States Citizenship and Immigration Services ("USCIS") has issued three separate "Prima Facie Determination" notices regarding the validity of the pending I-360 Self-Petition (Doc. # 1-7).

On August 17, 2026, Petitioner filed a Petition for Writ of Habeas Corpus. *See, Perez-Romero v. Daley et al*., Case No. 2:26-cv-345, Doc. # 1 (E.D. Ky. August 28, 2026). In it, he argued that his continued detention violated an order in *Immigr. Ctr. for Women & Child. ("ICWC") v. Noem*[1], staying 2025 Guidance, ICE Policy Number 11005.4, which had rescinded previous ICE policies protecting U, T, and VAWA petitioners from civil immigration enforcement absent exceptional circumstances. (Doc. # 1 ¶ 31).

On August 19, 2026, this Court issued an Order requiring Respondents to "consider the impact of the *Lopez-Campos*[2] decision on the present matter and, if the present matter must be resolved in Petitioner's favor under *Lopez-Campos*, Respondents shall immediately release Petitioner or, in the alternative, provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a), at which the government bears the burden of providing that detention is necessary by clear and convincing evidence." *Perez-Romero v. Daley et al*., Case No. 2:26-cv-345, Doc. # 3 at 2 (E.D. Ky. August 28, 2026).

In response, the Executive Office for Immigration Review scheduled a bond hearing for Petitioner in which the Immigration Judge denied bond (Doc. # 1-15).

---

1 *Immigr. Ctr. for Women & Child. v. Noem,* 351 F.R.D. 324 (C.D. Cal. 2026).

2 *Lopez-Campos v. Raycraft*, 175 F.4th 713 (6th Cir. 2026).

Petitioner contends that Respondents providing him a bond hearing was inadequate, and that Federal Respondents misrepresented to this Court that *Lopez-Campos v. Raycraft* resolved all issues raised in his petition. (Doc. # 1 ¶ 32). He submitted this Petition for Writ of Habeas Corpus on October 5, 2026. (Doc. # 1). In it, he again argues that the order from the *ICWC* litigation entitles him to relief. (Doc. # 1 at 9). He seeks immediate release from custody. (*Id.* at 12). The Federal Respondents filed a Response on November 7, 2026 (Doc. # 7), and Campbell County Jailer James Daley filed a separate Response on October 22, 2026 (Doc. # 6).[3] Perez-Romero filed a Reply on November 18, 2026. (Doc. # 8). Accordingly, the matter is ripe for review.

## III. ANALYSIS

Petitioner argues that his "pending VAWA self-petition (filed as the victim of abuse by his U.S. citizen daughter) renders him a member of the protective classes designated and granted injunctive relief in *ICWC v. Noem* and that Respondents, particularly ICE, are in direct violation of that injunction by failing to comply with the Policy and Directive which *ICWC v. Noem* reinstated, which is a violation of his Fifth Amendment Right to Due Process." (Doc. # 8 at 2).

The Violence Against Women Act of 1994, which amended the INA, "created the VAWA self-petition, which provided that noncitizens with abusive qualifying family members can 'self-petition' for family-based immigrant visas without their abuser's knowledge, consent, or participation." *ICWC*, 351 F.R.D. 324, 351 (citing 8 U.S.C. §§

---

[3] Respondent James Daley filed a Response claiming that he lacks the authority to order the relief Perez-Romero seeks. (Doc. # 6 at 2–4). Because the Court denies Perez-Romero's Petition, however, it need not reach the arguments Daley raises in his Response.

1101(a)(51), 1154(a)(1)(A)(iii), (B)(iii)). After receiving a self-petition, USCIS determines whether the evidence submitted establishes a prima facie case for VAWA relief. *See* USCIS Policy Manual, vol. 3, pt. D, ch. 5.A.1.[4] If USCIS concludes that the self-petitioner has addressed each of VAWA's eligibility requirements, it issues a Notice of Prima Facie Case. *See id*. The Notice "does not confer immigration status or a benefit," and it "is not a determination that the self-petitioner established eligibility or that the self-petitioner has met his or her burden of proof." *Id*. However, self-petitioners who establish a prima facie case are eligible for certain public benefits "such as welfare, health, disability, or unemployment and similar benefits while their petitions are pending." *Id.* at 351 (citing 8 U.S.C. §§ 1611(a), 1641(c)).

The *ICWC* case concerns ICE's implementation of a new enforcement policy in 2025 that repealed prior policies regarding noncitizens with pending victim-based benefit petitions, including VAWA petitions. *See id.* at 354. ICE's 2011 policy provided that it was generally against ICE policy to initiate removal proceedings against known victims of a crime, and that exercising favorable discretion—such as release and deferral or a stay of removal—would generally be appropriate. *Id.* at 353. ICE's 2021 policy echoed these choices and added that ICE would typically request expedited adjudications of victim-based benefit petitions from USCIS and would consider a person's eligibility for victim-based benefits a positive discretionary factor. *Id.* at 354.

In 2025, ICE issued an updated policy that modified some of these prior stances:

> [T]he 2025 Guidance establishes that the following policies govern ICE officers' enforcement actions towards individuals with pending victim-based

---

[4] https://www.uscis.gov/policy-manual/volume-3-part-d-chapter-5; (https://perma.cc/64JW-R2KY).

> benefit petitions: officers should (1) "coordinate and deconflict internally" and with law enforcement agencies "to ensure criminal investigative and other enforcement actions will not be compromised"; (2) "consult with" local ICE attorneys only "to ensure any such [civil enforcement] action is consistent with applicable legal limitations"; (3) need not consider a noncitizen being "a victim of a crime" as "a positive discretionary factor"; and (4) will not "routinely request expedited adjudications from USCIS," but may do so on a case-by-case basis when "it is in ICE's best interests."

*Id.* (internal citations omitted).

Ultimately, the *ICWC* court granted preliminary injunctive relief on a classwide basis and stayed ICE's 2025 policy because the plaintiffs were likely to succeed on the merits of their APA claims against the 2025 policy. *See id* at 380-392.

Petitioner's reliance on the ICWC litigation is the foundation of his argument for seeking relief, but *ICWC's* persuasiveness is highly limited by the fact that it is a non-final, preliminary injunction currently on appeal from a different district that is not even within this Circuit. *See Rauda Choto v. Ladwig*, No. 26-0322, 2026 WL 1652576, at *1–*2 (W.D. La. June 8, 2026) (rejecting the petitioner's argument under *ICWC* because the court was "not persuaded that the existence of a non-final order entered in a separate litigation independently establishes" the petitioner's entitlement to relief). Indeed, other courts considering similar arguments have declined to grant relief on that basis. *See, e.g., J.R.S.B. v. Olson*, No. 3:26-CV-478-CCB-SJF, 2026 WL 1481267, at *4, n.5 (N.D. Ind. May 27, 2026) (observing that a petitioner remains free to seek relief as a purported class member in the California action, but that another court's non-final order is not subject to preclusive effect in a separate proceeding); *Almanza v. Oddo*, No. 26-CV-720, 2026 WL 1506283, at *6 n.5 (W.D. Pa. May 29, 2026) (noting that the preliminary injunction issued in the California class action is not binding); *Jangi v. Figueroa*, No. CIV-26-1899-SLP,

2026 WL 3232142 (W.D. Okla. Oct. 28, 2026) ("most district courts have expressly found *ICWC* does not apply outside the Central District of California, often concluding the injunction is still in its preliminary stages and an appeal is pending, meaning that the injunction is not yet final and does not hold nationwide or preclusive affect.")

Furthermore, even if ICWC had effect here, the *ICWC* injunction would not entitle Petitioner to release. "A pending VAWA application does not, standing alone, confer lawful immigration status or create a statutory entitlement to release from custody. Petitioner has not identified a statute or binding regulation that prohibited Respondents from detaining [her] while [her] application remained pending." *Prado Orozco v. Raycraft*, No. 2:26-CV-11985, 2026 WL at *7 (E.D. Mich. July 24, 2026) (citation modified); *see also Flores v. Blanche*, No. 26-5446, 2026 WL 2069995, at *2 (D.N.J. July 17, 2026) (holding in the context of pending U-visa applications, a pending application "does not, standing alone, confer lawful immigration status, prevent enforcement of a final order of removal, or create a statutory entitlement to release from custody"). ICE's internal policy "does not, without more, create a judicially enforceable right to release or restrict an agency's statutory authority to detain an individual subject to a final order of removal." *Flores*, 2026 WL 2069995, at *2 (denying petitioner's APA and *Accardi* doctrine claims based on purported membership in the ICWC PI Order class).

Petitioner also alleges that his detention is a violation of his Due Process rights, though he does not provide any basis (beyond the *ICWC* preliminary injunction) for supporting this argument. The *ICWC* case, where relevant to Petitioner's claims here, had nothing to do with due process. *Prado Orozco,* 2026 WL 2138181 at *8, *9 n.6 (holding ICWC "had nothing to do with due process" and his VAWA prima facie

determination did not "provide any conceivable basis for a due process violation"). Thus, to the extent Petitioner relies on *ICWC* for his VAWA-related due process claim, his reliance is misplaced.

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1) Perez-Romero's Petition for Writ of Habeas Corpus (Doc. # 1) is **DENIED**;

(2) This matter is **DISMISSED and STRICKEN** from the Court's active docket.

This 23rd day of November, 2026.

**Signed By:**

***David L. Bunning***

**Chief United States District Judge**